PARK–IN THEATRES, Inc. v. OCHS et al.

Civil Action No. 876.

District Court, S. D. Ohio, W. D.

Jan. 12, 1948.

Philip C. Ebeling, of Pickrel, Schaeffer & Ebeling, all of Dayton, Ohio, Samuel E. Darby, Jr., of New York City, and Leonard L. Kalish, of Philadelphia, Pa., for plaintiff.

Lawrence B. Biebel, of Marechal & Biebel, all of Dayton, Ohio, and Albert L. Ely, Jr., of Ely & Frye, all of Cleveland, Ohio, for defendants.

NEVIN, District Judge.

On September 24, 1947, this court sustained a motion to dismiss which had theretofore, to-wit, on July 24, 1947, been filed on behalf of certain defendants herein. That decision is reported in 75 F.Supp. 504. Reference is made to this citation only because it will be helpful to anyone interested, to read that decision in connection with this one.

As stated in the decision of September 24, 1947, no counter affidavits had been filed up to that time by or on behalf of plaintiff, nor had plaintiff filed any response to defendants' "memorandum" attached to their motion, all of which had been filed by defendants on July 24, 1947.

No one appeared for plaintiff when defendants' motion was called and orally argued by defendants' counsel on a regular motion day of this court, to-wit, on September 15, 1947.

Subsequently, to-wit, on October 17, 1947, plaintiff filed a motion entitled "plaintiff's motion under rule 60(b), and motion under Rule 26(a), for leave to take deposition." The cause is now before the court on this motion.

In its motion, plaintiff requests the court "to vacate, withdraw and reconsider the decision filed September 24, 1947, (dismissing the complaint as to certain defendants for lack of venue-jurisdiction) and to hold defendants' motion to dismiss in abeyance until plaintiff has had an opportunity to take depositions going to the facts bearing upon the jurisdictional questions raised by defendants' motion." In support of its motion plaintiff cites Jiffy v. Alemite, D.C., 28 F.Supp. 385, and Urquhart v. American LaFrance Corporation, 79 U.S.App.D.C. 219, 144 F.2d 542, 544.

On November 3, 1947, oral arguments were presented by counsel for the respective parties in support of and contra plaintiff's motion. Defendants filed a "memorandum" opposing the motion. Among other authorities they cite as sustaining their contentions Fox v. House, D.C., 29 F.Supp. 673. Plaintiff has now filed affidavits in support of its motion.

No order has as yet been entered based on the court's decision of September 24, 1947.

Upon a consideration of the briefs and arguments of counsel and the applicable law, the court concluded to hold in abeyance the filing and entering of the proposed order based on its decision of September 24, 1947, and to determine what to do about that order after it had disposed of plaintiff's present motion, filed on October 17, 1947.

Incidentally, after the hearing in court on November 3, 1947, to-wit, on November 5, 1947, plaintiff had an additional summons issued to which was attached a duplicate copy of the bill of complaint. This produced, apparently, some confusion and misunderstanding upon the part of counsel with the result that defendants, on November 25, 1947, filed another motion to dismiss, the motion this time being addressed

to the so-called second complaint and summons. The cause came on for hearing, therefore, on the next regular motion day, to-wit December 8, 1947, on defendants' motion just referred to.

A transcript of everything stated by counsel and the court at the respective hearings has been made by the court reporter and filed in the clerk's office. It is part of the files in the case.

In view of the statements of counsel, as they appear of record, made on December 8, 1947, it is not necessary for the court to dwell further on this second motion, as it was agreed and stated (Tr. p. 39) by counsel for defendants that: "It is the same question, no new facts; the same question, to dismiss the case for want of venue," and by counsel for plaintiff (Tr. p. 40) that "the same question is involved in the motion which you already have submitted to you. * * * It all goes back to the question as to whether or not Mr. Ochs has a place of business in Dayton." It is further agreed (Tr. p. 41) that the decision on the first motion disposes as well of the second. With this understanding, the court will address itself to plaintiff's motion filed October 17, 1947.

I have asked counsel for the respective parties to come here today because I thought I could expedite the matter by giving this oral decision rather than to take the time necessary to prepare a more formal document. It is also in keeping with my statement made at the conclusion of the hearing on November 3, 1947, where (Tr. p. 38) I said:

"Now, what I will do is this: If after I go through these matters I abide by my original decision, I will put on this order. If not, I will notify counsel about that and in that event, I will probably sustain your motion to take the depositions. I don't know that I will, but that will probably follow, I should think. I will have to take the papers." The transcript then shows (p. 38) the following:

"Mr. Kalish (of counsel for plaintiff): Your Honor has noted those two decisions.

"The Court: If you have cited them.

"Mr. Kalish: Yes, they are in the affidavit or the motion."

As appears from the documents mentioned, the two decisions to which Mr. Kalish referred are respectively Jiffy v. Alemite, D.C., 28 F.Supp. 385, and Urquhart v. American-LaFrance-Foamite Corporation, 79 U.S.App.D.C. 219, 144 F.2d 542, 544, heretofore referred to. These two cases, as well as those cited by defendants, the court has now read and considered.

It seems to have been held in both the Jiffy and LaFrance cases that plaintiff does have the right to take the depositions which by its motion, it here seeks an opportunity to take. These depositions, however, to be "limited to the question of jurisdiction raised by defendants' motion." In the Jiffy case [28 F.Supp. 386] it is stated:

"The only question of any moment is the authority of this Court to permit the plaintiff to take depositions limited to the question of jurisdiction under Rule 26(a) of the new Federal rules, 28 U.S.C.A. following section 723c. Defendants allege that jurisdiction has not been obtained over them, and having filed their motion to dismiss and to quash service, it is urged that no depositions can be taken by the plaintiff to produce facts to meet the affidavits filed in support of the motion to dismiss. Defendants call attention to the language of the rule which provides that depositions may be taken by leave of court 'after jurisdiction has been obtained over any defendant.' No answer has been served.

"That the summons and complaint and return of service prima facie vest this Court with jurisdiction cannot be subject to much doubt. This Court has jurisdiction to determine the motion to dismiss. It may decide this motion on the complaint and affidavits submitted, or hear testimony bearing upon the question. It would seem that it is within the spirit and intent of the new rules, under these circumstances, to permit the Court to authorize the taking of depositions which are limited to the question of jurisdiction raised by defendants' motion. Under the former practice, it was customary to order that oral testimony be taken at the hearing if the Court was of the opinion that it would be more satisfactory to decide the question of jurisdiction on oral evidence rather than on affi-

davits. It is fair to assume that the framers of Rule 26(a) contemplated that, in conformity with that practice, depositions may be taken under the circumstances presented herein in order to facilitate a more satisfactory showing thereby. The nature of the jurisdictional issues presented apparently requires a full and complete hearing.

"The views expressed herein are supported by Moore's Federal Practice under the New Civil Rules, which states (p. 2467): 'Where the defendant serves in advance of answer a motion to dismiss under Rule 12(b), such as a foreign corporation moving to dismiss on the ground of the insufficiency of service of process, it would seem that the court should ordinarily grant leave to the plaintiff to take depositions on the issues of fact, if any, raised by the motion, such as matters relating to the question whether the foreign corporation is doing business in the state, and whether the person served is an agent of the corporation who is authorized to receive service of process under Rule 4(d) (3), (7).'"

"Motion denied."

The court in the LaFrance case comes to the same conclusion as did the court in the Jiffy case and cites that case with approval, the decision in the LaFrance case being by the United States Court of Appeals for the District of Columbia. On page 544 of 144 F.2d, after quoting from the Jiffy case and especially this quotation from Moore's Federal Practice, the Court of Appeals of the District of Columbia say:

"The above quotation has been approved in the case of Jiffy Lubricator Co. v. Alemite Co." They then cite D.C., 28 F.Supp., 385.

However, in the instant case, in view of its ultimate conclusion, it is not necessary for the court to and it does not decide whether plaintiff has the right to or should be given the opportunity to take the depositions referred to in its motion.

■ In fact, according to the decision of the Court of Appeals of the District of Columbia in the LaFrance case, until this court has first decided a preliminary question, it is not proper for it to decide plaintiff's motion. This preliminary question and the proper and orderly procedure to be followed is stated by the Court of Appeals of the District of Columbia in the LaFrance case at page 544 of 144 F.2d as follows:

"The record discloses, however, a preliminary question on which there should be a hearing and a finding before the court exercises its discretion on the request for depositions. It appears that plaintiffs are residents of Pennsylvania, maintaining no place of business in the District. The principal place of business of the defendant is in New York. No reason is disclosed by the plaintiffs why the suit should be brought in the District of Columbia, an apparently inconvenient forum for both parties. It is settled that district courts having jurisdiction by virtue of a federal statute have discretion to withhold the exercise of the jurisdiction conferred upon them where the parties are non-residents and where there is no want of another suitable forum.

"The reason for that discretion is to protect the courts against the abuse of the opportunity of non-residents to resort to their jurisdiction in the enforcement of claims against citizens of other states. As one writer has said:

" 'Upon what has come to be known as the doctrine of forum non conveniens, some courts have, without resort to statute, refused to entertain jurisdiction in cases involving certain causes of actions when suit is between non-residents or aliens. The reasons for refusal vary considerably. They include unwillingness to extend local judicial facilities to non-residents or aliens when the docket may already be overcrowded; the belief that the non-resident plaintiff sought the forum to secure procedural advantages or to annoy the defendant, and the belief that the matter can be better tried elsewhere.'

"In determining whether the court should withhold exercise of jurisdiction in this case considerations such as the convenience of the parties, the existence of an adequate remedy at the residence of the defendant, the availability of witnesses and testimony, should govern.

"The order will be reversed and the cause remanded (1) for the court to de-

termine whether it should retain jurisdiction over this case applying the principle of forum non conveniens."

The present inquiry before the court then is, as stated by the court in the LaFrance case, "should (the court) retain jurisdiction over this case applying the principle of forum non conveniens"?

If the court concludes, in the exercise of a proper and judicial discretion, that it should not entertain the action in this district, that, according to the ruling in the LaFrance case, would seem to end the matter and leave no need to pass on other questions.

What does the record show as to the facts in the instant case?

This is a patent infringement suit. Plaintiff, as alleged in its complaint, is a foreign corporation, organized under the laws of New Jersey, with its principal place of business in Camden, New Jersey.

Plaintiff claims defendants and particularly defendant Ochs, who Mr. Kalish says in his affidavit "is a principal and moving spirit in the infringements identified in paragraph 7–a of the complaint" have a place or places of business here in Dayton, or in Montgomery County, in the Southern District of Ohio. This defendants, including defendant Ochs, strenuously deny.

Defendants submit by affidavit and statements of counsel that they do not have a place of business in Dayton or this District, or anyone representing them in Dayton or this District upon whom service of summons can properly be made.

They, and especially defendant Ochs, insist, claim and assert that they do have a place of business in Cleveland, Ohio, in the Northern District, and invite plaintiff to sue and serve them there if plaintiff wishes so to do. Reference to this is made by the court in its decision of September 24, 1947, heretofore referred to.

As to these matters the transcript (at the pages noted) shows the following: Where I refer to a page now, unless I change it, I am referring to the page of the transcript. On page 3, Mr. Ely, of counsel for defendants, said:

"We also have my affidavit submitted as evidence as required showing that the plaintiff in this case not only brought a suit for alleged infringement of patent down here in Dayton where there was no venue at all over the parties but knowingly brought the suit down here in Dayton, or brought the suit down here in Dayton knowing full well that Ochs and Haas and the Ohio Drive-In Theatre Management Company were all located in Cleveland. In other words, they did it with full knowledge."

On pages 6 and 7 Mr. Ely said:

"Now, we also have affidavits of Ochs and Haas. Take Ochs. He says he is a resident of Cleveland, Ohio. * * * Mr. Ochs points out that he is a resident of Cleveland. His sole regular and established place of business is at 601 Bulkley Building, Cleveland 15, Ohio. He is president of The Ohio Drive-In Management Company, an Ohio corporation having, since its organization, its principal offices at 601 Bulkley Building, Cleveland 15, Ohio. Neither he nor The Ohio Drive-In Management Company have any regular and established offices or place of business other than at the address above given, and particularly neither he, personally, nor The Ohio Drive-In Management Company are inhabitants of Dayton or elsewhere in the Southern District of Ohio nor do they have any regular and established place of business within said district."

On pages 11 and 12, Mr. Ely stated further:

"There is another affidavit, of course, showing that the plaintiff filed down here knowing full well that the defendants, Ochs, Haas and Ohio Drive-In Management were located in Cleveland. That was the residence of the personal defendants and the only place of business of the corporate defendant. They made no effort to check the place of business and the principal offices of the corporate defendants with the secretary of state of Ohio. We point out too in the memorandum that this suit, we believe, was just simply part and parcel of a scheme of plaintiff to harass the defendants into taking a license under the patent and the defendants haven't wanted to take license under the patent and this is part of the general scheme to file down here, then get alias subpoena against the

personal defendants and upset them and disturb them."

And on page 32, Mr. Ely made the further statement:

"Insofar as these defendants are concerned, Kalish now has affidavits; he has the finding of the marshal; he knows that Ochs is in Cleveland; Ochs can't deny it. Cleveland is not any more remote to these people from Philadelphia than Dayton is, and he says that they must have depositions otherwise they are blocked. That is not true, your Honor. These statements were made under oath in the way of affidavits and they know very well, with no more trouble, they could go up to Cleveland, and if they think they can, they can start the suit up there. They can get Ochs on the stand; he can't deny venue."

As shown on pages 18 and 20 of the transcript, Mr. Kalish, who, I have already stated, is of counsel for plaintiff, made the following statements:

"I asked Mr. Ely on March 28, 1947, just a few months before I actually filed suit where it is that he and I will have to meet in court on this issue and he says, 'You have your choice, either in Dayton or in Cleveland.' I have filed here many others."

That last sentence is as it appears in the transcript and I have read it as it is. Whether that is exactly what Mr. Kalish said or whether he meant he is referring to filing other suits, I don't know, but that is the way it appears here.

On pages 19 and 20, Mr. Kalish said:

"Now, apparently about six weeks after my conversation with Mr. Ely, of March 28, 1947, Mr. Ochs moved to Cleveland for reasons best known to him, and I assume they are proper reasons. But whether he moved to Cleveland or not does not alter this fact that under the statute he still has here this place of business, which is still booming and operating, two of them. * * * That place of business is still in operation and in that connection I should like to offer also this morning's page 16 of the Dayton Journal, dated Monday, November 3, 1947, in which there is a sizable advertisement reading as follows:

'Drive-In Theatres, Ochs Operated. Dayton's Original, 2700 Valley pike. Dayton's Beautiful, 6500 West Third street.' The same two Drive-In Theatres.

"Now, that fully supports what we had every reason to believe, first from Mr. Ely's own personal statement to me, on March 28, 1947, that we could sue in Dayton or in Cleveland, a mere matter of choice, and it further supports every piece of publicity ever put out, including the current publicity in today's paper."

These statements Mr. Ely vigorously denies. At page 29 of the transcript, he says:

"Now getting down to the merits of Mr. Kalish's suspicions as to why he doubts the affidavits of the parties. In argument today, the first time I have ever heard it, he said that last March 1947, he called me and I told him that they could sue either in Dayton or Cleveland. I specifically deny that, your Honor. I wasn't asking him or telling him where to sue us. Finally, in June he did call me and ask me where they could sue us. I said: 'You can sue in Cleveland. That is the only place you could sue, as far as I know.' He had that instruction before he filed suit from me."

What are plaintiff's reasons for bringing this suit in this District? As to this, Mr. Kalish says at page 17:

"May it please the Court, the statute governing the service in patent cases is Section 109 of Title 28 and it provides, among other things, that a party, either an individual person or a corporation, can be sued and served not only in the district of their residence or where they are inhabitants, but also in any district where they have a regular and established place of business and in which the acts of infringement are being committed."

And on page 18, Mr. Kalish said:

"The infringement is what is called a Drive-In Theatre. It isn't something you can bring into court. It isn't like the ordinary infringement case where you can go to a store and buy a specimen and show it to the court. It is something which is rooted to the ground."

And on page 35 Mr. Kalish stated further:

"Now, your Honor, we can't take his two, three, four drive-in theatres from Dayton and take them up physically to show to a judge in Cleveland, but we can, as we have in another district, asked the federal judge, and he did go out and see the drive-in theatre which we charged to be an infringement, because the first thing every judge wants to see is the thing that is accused as the infringement.

"Now, Judge Harkand, who tried a case very similar to this in Providence, Rhode Island, held the patent valid and infringed by a drive-in theatre identical to these here. He went out and saw what it was.

"Now, counsel says, 'Why don't you sue in Cleveland?' knowing full well we would be deprived of the opportunity of showing to the judge the thing we charge to be the infringement.

"The Court: Do you have drive-in theatres in Cleveland?

"Mr. Ely: Yes, there are and Mr. Kalish well knows.

"Mr. Kalish: There are drive-in theatres in Cleveland, but the one in Dayton is the oldest drive-in theatre operated and built by Mr. Ochs.

"Now, the statute of limitations will go by or the six-year period of the statute of limitations under the Patent Act will run out on this early Dayton theatre. The others are all young ones and I think we rightfully came to sue the one on which the statute of limitations is near running out and we are here because that is the oldest drive-in theatre."

The reasons advanced by plaintiff for bringing this suit in this District do not appeal to the court.

 It is not necessary for the court, in order to decide a patent case properly to "view the premises." In fact, and in law, it would be highly improper for the court to decide the case on a view of its own which was not a part of the record in the case.

 How could such a decision be reviewed by a higher court? When a jury "views the premises" the court explicitly instructs them that they are not to consider what they see as evidence in the case—the view is merely to enable them to apply the evidence to be heard by them later. The same rule is applicable to the court.

No doubt it might be helpful to see a Drive-In theatre as an aid in following the testimony of witnesses, but photographs and drawings can be supplied, and often are, where the alleged infringing device is too large or cumbersome to be brought into court. Besides, in the instant case, it is conceded by plaintiff, as just pointed out, that "there are drive-in theatres in Cleveland."

As to the Statute of Limitations, if the six-year period "is near running out" as counsel assert, no one is to blame for the delay in instituting suit but plaintiff itself. Plaintiff cannot here complain of or rely upon its own inaction.

As shown on p. 25 of the Transcript, Mr. Kalish stated:

"The only question in issue is whether these two Drive-In Theatres in Dayton are or are not the regular and established place of business of the named defendants. If they are, then the service was good. If they are not, the service was bad. But there is no way ultimately to decide that fact question except by deposition."

But for the purposes of the present decision, it may be assumed that the two drive-in theatres in Dayton are regular and established places of business of "the named defendants" and that defendants were properly served, and that under the law the suit could be tried in this District. Exactly this was found and stated by the Court in the LaFrance case, at page 543 of 144 F.2d. There the court said:

"The following facts appear in the record bearing on the question whether the defendant had an established place of business in the District of Columbia: Defendant is a New York corporation. It maintains an office in the District. Its name is displayed on the door and listed in the telephone directory."

(We had testimony in the instant case of the names being in the telephone directory.)

"The office force consists of a manager, a stenographer and two salesmen. The salesmen not only take orders for the defendant's products in the District but also in neighboring states. The return on the summons shows that service of process was had on the manager of the office.

"On the basis of these facts we believe that the court erred in finding that the defendant did not have an established place of business in the District of Columbia. Used in its ordinary sense the term certainly includes the defendant's establishment; indeed, it would be difficult to imagine what other term could be applied to it since the office is permanent and the employment and activities substantial. * * * Recent cases have upheld jurisdiction in a patent infringement suit against defendants maintaining a permanent office coupled with substantial business activity."

The purport of that decision being, as counsel can see, to hold that in that case the defendants did have an established place of business. In fact, they hold that the lower court erred in not finding that was true. But nevertheless, the Court of Appeals of the District of Columbia says what I have already referred to that even so before the court decides the question of taking depositions, there is this preliminary question to be decided, even though the defendants did have a place of business in the District.

So, I say, for the purposes of this present decision, it may be assumed that the defendants in this case have a place of business in this District.

Nevertheless, such a suit can also be tried in the Northern District, where defendants admit having a place of business and where they say they live. Plaintiff has advanced no valid or appealing reason why the suit should not be brought and tried in that district if it wishes to press the matter.

As stated, plaintiff is a foreign corporation. Defendant, The Ohio Drive-In Management Company, is an Ohio corporation having its principal place of business in Cleveland, Ohio, in the Northern District of Ohio. As stated by Mr. Ely in the transcript, p. 32, Cleveland is no more remote from Philadelphia or Camden, N. J., than is Dayton—probably not quite as much so. It would seem rather to defeat the ends of justice than promote them to require defendants to go to the expense and trouble of coming to Dayton with their counsel, witnesses and evidence under these circumstances. Nor would any useful purpose be served by doing so.

The court finds, upon the facts existing in the instant case, taking into consideration the convenience of the parties, the existence of an adequate remedy at the residence of the defendants who have heretofore filed motions to dismiss herein, and the availability of witnesses, all of which the court in the LaFrance case says are matters to be taken into consideration, that the principle of forum non conveniens properly is applicable in this case and the court concludes that it should be here applied.

Accordingly, and in view of the foregoing, the court will not enter any order on its decision rendered September 24, 1947, nor will it enter any order on defendants' so called second motion to dismiss filed on November 25, 1947. The court will not, and does not, decide plaintiff's motion filed on October 17, 1947 "for leave to take depositions" nor will any order be entered on that motion.

On the other hand, the court does decide that it should and, for the reasons stated, it does withhold exercise of jurisdiction in this case, and an order to that effect and dismissing the cause without prejudice and at plaintiff's costs, has been prepared by the court and will be entered herein. I will submit the order to counsel so that they may note on it that they have seen it before it is filed and will furnish a copy to counsel for the respective parties.